## Meek v. Gem Boat Service, Inc.
### [Cite as 7 AOA 191]

*Case No. 89-OT-32*
*Ottawa County, (6th)*
*Decided September 14, 1990*

*David R. Pheils, Jr., for Appellees.*

*Mark I. Wallach, Joseph A. Castrodale, and D. Bowen Loeffler, for Appellant.*

This case is before the court on appeal from the August 23, 1989 judgment entry of the Ottawa County Court of Common Pleas which ordered appellant, Gem Beach Marina, Inc. to pay $360,378.75 in damages to appellees, Ken Meek and other members of the class action.

On September 11, 1987, Meek filed a class action complaint against appellant seeking treble damages, pursuant to R.C. 4905.61, for all water and sewer charges assessed by appellant and paid by appellees for services provided since January, 1961, on the ground that appellant did not have operating authority or approval of its fee schedule from the Public Utilities Commission of Ohio (P.U.C.O.).[1] The action was certified as a class action by the court on February 5, 1988.

Cross-motions for summary judgment were filed on the issues of the method of calculation of damages and whether the court had jurisdiction to make the calculation. The court issued its findings of fact, conclusions of law, orders and judgment entry on April 14, 1989. The court found that it was the proper forum for assessing damages, and that damages should be based on the total sewer charges assessed and paid because any fees charged without P.U.C.O. approval were improper.

On May 30, 1989, appellant filed a motion requesting leave to amend its answer to assert the additional affirmative defenses of statute of limitations, waiver, estoppel, and laches. Appellant asserted that these defenses would not prejudice appellees, that appellant's current counsel had just recently become involved in the action, that these defenses were obvious, and that the issues had already been addressed by the cross-motions for summary judgment (and, therefore, merely conformed the pleadings to the issues considered). The court denied the motion because the motion was filed nineteen months after the first answer and thirty-four days before trial, without any justifiable reason for the delay and because it was filed after all of the issues except the amount of damages had been resolved. The court found that appellant had not set forth a prima facie showing that such defenses had merit, that the motion was not a delay tactic, or that the granting of the motion would not cause prejudice to appellees.

On June 28, 1989, appellant filed a motion to vacate the class certification asserting that Meek failed to comply with Civ. R. 23. Appellant argued that Meek improperly gave notice of the class action after the trial court had ruled on part of the issues before the court and because the content of the notice, prepared by Meek and not the court, was misleading and unfair to appellant. The court denied the motion on the same day finding that appellant's arguments were without merit.

On July 3, 1989, the case was scheduled to go to trial. However, on that day, the court held another pretrial conference to hear oral arguments on pending motions filed by appellant, which were denied by journal entry dated August 22, 1989. The case was then scheduled for trial on August 21, 1989.

The case proceeded to trial on August 21 and 22, 1989. The jury calculated the amount of fees assessed and charged as $120,126.25 for the period of 1962 to 1987. The court issued its journal entry on August 23, 1989, ordering that $360,378.75 in damages ($120,126.25 times

three) be paid by appellant to appellees. This order was stayed pending appeal.

Appellant appeals from the August 23, 1989 order of the trial court asserting the following assignments of error:

"1. THE TRIAL COURT ERRED AS A MATTER OF LAW IN RULING THAT, UNDER O.R.C. SECTION 4905.61, PLAINTIFFS WERE ENTITLED TO THREE TIMES THE ENTIRETY OF ALL WATER AND SEWER CHARGES EVER PAID BY THE PLAINTIFFS TO THE DEFENDANT.

"2. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER WHICH INCLUDED THE STATUTE OF LIMITATIONS AND OTHER AFFIRMATIVE DEFENSES, AS WELL AS IN DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE DENIAL OF LEAVE TO AMEND.

"3. THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO VACATE THE CLASS CERTIFICATiON SINCE NOTICE WAS NOT GIVEN TO CLASS MEMBERS UNTIL AFTER THE TRIAL COURT RULED ON THE MERITS AND BECAUSE THE CONTENT OF THE NOTICE WAS IMPROPER."

In its first assignment of error, appellant argues that the court erred when it determined the damages were the total fees charged and paid rather than appellees' actual damages, which would be that portion of the fees charged and paid which were excessive and unreasonable. Further, appellant argues that as a result of this erroneous decision, the court also erred by excluding appellant's evidence at trial relating to the reasonableness of its rates, by instructing the jury to determine only the amount of fees charged and paid, and by refusing to instruct the jury as appellant had requested.

The issue raised by appellant requires us to interpret R.C. 4509.61. While the words of the statute are important, we must also consider the overall context of the statute and the purpose of the act under which it was enacted. *State v. Cravens* (1988), 42 Ohio App. 3d 69, 72. The words used in the statute must be given their generally accepted meaning unless the statute indicates otherwise. *Id.*

R.C. 4905.32 provides in pertinent part that:

"No public utility shall charge, demand, exact, receive, or collect a different rate, rental, toll, or charge for any service rendered, or to be rendered, than that applicable to such service as specified in a schedule filed with the public utilities commission which is in effect at the time."

The P.U.C.O. has already found, and it is undisputed, that appellant has violated this section. The P.U.C.O. can impose a penalty upon appellant for such a violation according to R.C. 4905.99(C).[2] Furthermore, any person injured by appellant's failure to comply with R.C. 4905.32 may seek treble the damages sustained as a result of that violation. R.C. 4905. 61. The issue raised by this case is the interpretation of R.C. 4905.61, which reads as follows:

"If any public utility or railroad does, or causes to be done, any act or thing prohibited by Chapters 4901., 4903., 4905., 4907., 4909., 4921., 4923., and 4925. of the Revised Code, or declare to be unlawful, or omits to do any act or thing required by such chapters, or by order of the public utilities commission, such public utility or railroad is liable to the person, firm, or corporation injured thereby and treble the amount of damages sustained in consequence of such violation, failure, or omission. Any recovery under this section does not affect a recovery by the state or any penalty provided for in such chapters."

More specifically, we must interpret the phrase "damages" in R.C. 4905.61. Appellees contend, and the lower court agreed, that appellees' damages, as a matter of law, were all water and sewer charges billed and paid. Otherwise, they argue, there would be no incentive for complying with the statutes governing public utilities. Appellant argues, on the other hand, that appellees' damages are the actual losses suffered. Appellant cites, by analogy, two interstate commerce cases which have held, under similar circumstances, that a shipper cannot recover transportation fees charged and paid even though the carrier did not have any operating authority and its schedule of rates was not approved by the Interstate Commerce Commission. See *Square D Co. v. Advanced Freight, Ltd.* (1988), 48 Ohio App. 3d 192.

We find that the cases cited by appellant are distinguishable because they are based on the fact that the Interstate Commerce Act did not provide for such a remedy. Rather, the act provided for an administrative process whereby

a shipper could challenge the rates, the Interstate Commerce Commission would determine what rate would have been reasonable, and then, the shipper could recover in a court of law any excess charges paid. The courts in the case cited in *Square D* concluded that it would circumvent the statutory procedure if it permitted the shipper to pursue some common law remedy. In the case before us, however, the statute provides that any injured person may recover for losses suffered. There is no statutory limitation imposed by the legislature that the P.U.C.O. must first determine what would have been a reasonable rate during the time an entity acts as a public utility without the P.U.C.O. 's authorization. We also have not found any Ohio cases which require such a determination. Cf. *State, ex rel. D.P. & L Co., v. Kistler* (1979), 57 Ohio St. 2d 21, 23; *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St. 2d 191, at paragraph one of the syllabus; *North Ridge Investment Corp. v. Columbia Gas* (1973), 49 Ohio App. 2d 74, 76. (The court cannot determine damages under R.C. 4905.61 until the P.U.C.O. has found a violation of certain statutes concerning public utilities or an order of the public utility commission.)

We also find that two methods already exist for deterring entities, which act as public utilities, from ignoring the P.U.C.O.'s authority. The first method is R.C. 4905.99(C), which permits the P.U.C.O. to impose criminal penalties for such a violation. The second method is R.C. 4905.61, which provides that the entity is liable for treble the damages suffered as a result of the violation. See *French v. Dwiggins* (1984), 9 Ohio St. 3d 32, 36.

Finally, we look to the purpose of the statute and the general meaning of the word, damages. Damages has been defined as the pecuniary compensation paid by a wrongdoer for the losses suffered by an injured person. *Cincinnati v. Hafer* (1892), 49 Ohio St. 60, 67; *Greer v. Bd. of Commr. of Knox County* (1927), 33 Ohio App. 539; *Drayton v. Jiffee Chemical Corp.* (1978), 395 F. Supp. 1081, motion denied (1976), 413 F. Supp. 834, modified (1978), 591 F. 2d 352. We find nothing in the statute, or its counterparts, which would indicate that the legislature intended "damages" to incorporate more than actual loss.

Therefore, we conclude that appellees may recover only the actual damages they sustained as a result of appellant's failure to submit to the P.U.C.O.'s regulation, which Pursuant to statute must be trebled. Accordingly, we find appellant's first assignment of error well-taken.

In its second assignment of error appellant argues that the court abused its discretion by denying appellant's motion for leave to amend its answer to include certain affirmative defenses to "conform the pleadings to the issues and evidence." The trial court had denied the motion on the grounds that the trial was eminent and the defenses to be raised involved issues already resolved. Since this case will be remanded for a redetermination of damages, the grounds for denying the motion no longer exist. Furthermore, appellant's justification for the motion (to conform the pleadings to the issues and evidence) no longer exists. Therefore, although we find that appellant's assignment of error is moot, it may be addressed by the trial court on remand under a new set of circumstances.

In its third assignment of error, appellant argues that the court erred by denying appellant's motion to decertify the class.

On February 5, 1988, the court granted Meek's motion to certify the action as a class action pursuant to Civ. R. 23. Appellant filed an appeal from this decision on March 3, 1988. The trial court's decision was upheld by this court on October 7, 1988. On April 14, 1989, the court granted partial summary judgment to appellees. On June 28, 1989, appellant filed a motion to vacate the class certification. Appellant asserted therein that appellees had notified the class members of the class action on May 29 and 31, 1989. Further, appellant stated that the notice indicated that partial summary judgment had been rendered in appellees' favor and that the only issue remaining for trial was the calculation of damages. Appellant argued that the timing and content of the notice were improper because the notice was sent after a partial ruling on the merits of the claim and the content of the notice, which was not approved or prepared by the court, is misleading and unfair. The court denied the motion on June 28, 1989.

Civ. R. 23(C) (2) provides as follows:

"(2) In any class action maintained under subdivision (B)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through a reasonable effort. The notice shall advise each member that (a) the court will exclude him from the class if he so requests by a

specified date; (b) the judgment, whether favorable or not, will include all members who did not request exclusion; and (c) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

Meek's motion to certify indicated that he sought to certify this action as a class action under Civ. R. 23(B) (3) because he primarily sought damages. We presume that the court intended to certify the class under this section since it granted Meek's motion without indicating otherwise.

There is nothing in the record, however, to indicate that a notice was sent to class members pursuant to Civ. R. 23(C) (2). The mandatory language of the rule indicates that the court must order that a notice be sent. However, we find nothing improper with the court ordering a party to send the notice. Accord, *Minnesota v. United States Steel Corp.* (D. Minn., 1968), 44 F.R.D. 559. Nonetheless, the record in this case does not contain an order from the court directing Meek to send such a notice.

Therefore, we conclude that any notice prepared and sent was without court approval. We note appellees' argument that if the court had not overseen the notice process, it would have granted appellant's motion. While this may be true, the record does not reflect that this was the case. The court's order denying appellant's motion did not indicate its basis. Therefore, we find the court did not comply with Civ. B. 23(C) (2) and, therefore, this action should not have proceeded as a class action. The court could have rectified the error by vacating the class certification or ordering that proper notice be sent. Since the court took neither action, we find that it erroneously overruled appellant's motion.

Wherefore, we find appellant's third assignment of error well-taken.

Having found that substantial justice has not been done the party complaining, the judgment of the Ottawa County Court of Common Pleas is reversed. This case is remanded to the trial court for further proceedings not inconsistent with this decision. Pursuant to App. R. 24, appellees are ordered to pay the court costs incurred in connection with this appeal.

HANDWORK, P.J., GLASSER, J., concur.

ABOOD, J., dissents.

---

[1] In 1985, appellees had filed a class action complaint against appellant before the P.U.C.O. Appellees sought to have appellant's sewer lines and facilities made subject to P.U.C.O. regulation. On March 3, 1987, the P.U.C.O. issued its opinion and order finding that appellant's operations constituted a public utility and, therefore, were subject to regulation by the P.U.C.O. The P.U.C.O. also found that appellant had not been charging for services in conformity with tariffs approved by the P.U.C.O. Appellants were ordered to comply with P.U.C.O. regulations and submit various documents to the P.U.C.O. Appellants did not timely appeal this decision to the Ohio Supreme Court as permitted by R.C. 4903.11.

[2] R.C. 4905.99(C) reads as follows:

"(C) Whoever violates section 4905.56 of the Revised Code shall be fined not less than one hundred nor more than one thousand dollars or be imprisoned not less than one nor more than two years, or both."